ERNEST BUSH V. STATE OF NEBRASKA.

FILED JUNE 19, 1901. No. 11,779.

1. **Information: VERIFICATION: COUNTY ATTORNEY.** An information charging murder may be verified by the prosecuting attorney of the proper county.

2. **Prosecuting Attorney Equivalent to County Attorney.** The terms "prosecuting attorney" and "county attorney" are used interchangeably in our statutes, and are synonymous.

3. **Assistant County Attorney Not Required to Give Bond.** It is proper for the county attorney, under the direction of the district court, to procure an attorney to assist him in the trial of a person charged with a felony, and such assistant is not required to qualify and give a bond as deputy county attorney.

4. **Copy of Information.** The state is required to furnish a defendant informed against for a felony with one copy, and no more, of the information filed against him, within twenty-four hours after such filing.

5. **Jury in Custody of Sheriff.** *Held,* That the record discloses that the jury were in the custody of the sheriff during the entire progress of the trial.

6. **Misconduct of Jury Must Appear of Record and in Motion for New Trial.** The alleged misconduct of a juror, to be available on review, must be presented by the record and assigned for error in the motion for a new trial.

7. **Grouping Instructions in Assignments.** Assignments of error complaining of the giving of groups of instructions are too indefinite and uncertain to be considered, unless all included in such groups are bad.

8. **Evidence Sufficient.** Evidence examined, and *held* sufficient to sustain a conviction of murder in the first degree.

ERROR from the district court for Dundy county. Tried below before NORRIS, J.   *Affirmed.*

*Charles W. Meeker, James S. West* and *Burr & Spencer,* for plaintiff in error.

*Frank N. Prout, Attorney General, Norris Brown, Deputy, B. F. Eberhart* and *Webster S. Morlan,* for the state.

NORVAL, C. J.

In the district court for Dundy county Ernest Bush was informed against, and found guilty of the murder of one Silas Bailey, and from the judgment of conviction he brings the record here for review.

There is complaint concerning the form and manner in which the information is verified.   In the body of the information it is recited that "B. F. Eberhart, county attorney in and for Dundy county," informs against the defendant for the crime charged.   The name of B. F. Eberhart is subscribed thereto.   It is verified as follows, omitting the formal portions: "I, B. F. Eberhart, do solemnly swear that I am prosecuting attorney in and for said county, and that the allegations and charges in the foregoing information are true, as I verily believe."   The same is signed by Eberhart, and the jurat of the clerk follows.   It is claimed that it is defective, in that it purports to be verified, not by the "county attorney," but by the "prosecuting attorney."   Without inquiring whether defendant has so made the record as to entitle him to raise this question, it is sufficient to say that it is evident that the terms "prosecuting attorney" and "county attorney," as employed by our legislature, are synonymous, and may be used interchangeably.   The section of the statute which authorizes the election of such an officer designates him as "county attorney."   The section of the Code of Criminal Procedure which requires the verification of informations names him as "prosecuting attorney," and he is alluded to in other sections and stat-

utes by one or the other of those names, indicating
plainly that the legislature employs the two terms with
the same sense and meaning. Section 579 of the Criminal
Code was followed literally by the prosecuting officer,
and. we have no doubt of the propriety of such action.
*Dinsmore v. State,* 61 Nebr., 418.

The court, during the proceedings, made the following
record: "On the 28th day of November, 1899, on applica-
tion of said B. F. Eberhart, county attorney, for the ap-
pointment of an attorney to assist in the prosecution,
and it appearing to the court that it was necessary for
the county attorney to have assistance in the prosecution
of the matter, W. S. Morlan, attorney at law, is hereby
appointed to assist the county attorney in the prosecu-
tion of this action." No exception was taken to this
order of the court at the time, but complaint is made for
the first time in this court that the proceeding was erro-
neous, because Morlan took no oath and filed no bond as
deputy county attorney while acting as such assistant.
It is quite evident from the record that Mr. Morlan was
not acting as deputy attorney, but his appointment as
assistant was pursuant to that portion of section 20,
chapter 7, Compiled Statutes, which provides that the
county attorney of any county may, under the direction of
the district court, procure such assistance in the trial of
any person charged with the crime of felony as he may
deem necessary therefor. Mr. Morlan, therefore, did right
in not qualifying or giving bond as deputy county
attorney, because he was not appointed to act . in that
capacity.

Counsel for defendant asked an order of the court di-
recting the clerk to furnish them with a copy of the in-
formation, which order was refused, and such refusal is
assigned as error. The record discloses that prior to the
filing of this motion the sheriff had duly served a true
and certified copy of the information upon the defendant
personally. We know of no law. requiring the state to
furnish a defendant or his counsel more than one copy

of the same information or indictment, and none is pointed out by counsel. Criminal Code, sec. 436.

It is next complained that the record does not affirmatively show that the jury was, during the whole of the trial, in the custody of the sheriff. We think the record does fully disclose this fact, as will appear by the following portion thereof: "And thereupon the plaintiff and defendant entered into the trial of said cause and proceeded with said trial, until the 4th day of December, 1899, during all of said time the said Ernest Bush accompanied by his attorneys J. S. West and C. W. Meeker being present in open court, and the said trial having been adjourned from time to time during said time, and the jury all of said time being in the custody of the sheriff; said cause also being adjourned over a holiday and a Sunday." It is perhaps possible to so twist this language as to make it appear that the jury was not in the custody of the sheriff during the Sunday and the holiday, but such a construction would be a very strained one; and we think it very clearly appears from the record that the jury was properly guarded by the proper officer.

There is further complaint made of certain alleged misconduct on the part of the jury, or of those having it in charge. If any such misconduct occurred, the defendant is not in position to avail himself of it, as no such ground was alleged in his motion for a new trial, and it can not be raised for the first time in this court. *Dolen v. State,* 15 Nebr., 405. This also applies to certain alleged misconduct on the part of the prosecuting officers, and of remarks of the court during the progress of the trial, all of which alleged errors are clearly waived.

Again, error is alleged in the giving of certain instructions. The assignment of error in the motion for a new trial, relative to giving of instructions by the court of its own motion is as follows: "The court erred in giving paragraph No. eight, ninth and eleventh paragraph of instructions on its own motion." As one of the instructions so complained of is undoubtedly a proper instruc-

tion, the court will not inquire further to ascertain whether the other two should have been given. *South Omaha v. Powell*, 50 Nebr., 798; *Hawkins v. State*, 60 Nebr., 380.

Lastly, it is contended that the verdict of guilty is not sustained by the evidence. From the record it is disclosed that the defendant and deceased were, on and prior to February 7, 1899, employed by one L. Morse as hands upon his stock ranch in Dundy county. Defendant was a boy, at that time between sixteen and seventeen years old. Bailey was over sixty. At noon on the day in question, Morse left the ranch and was absent until nightfall. When he left, defendant and Bailey were alone. Bailey had instructions to do some work upon a hay rack, or feed rack, in the barn lot, and defendant was engaged in doing odd chores around the place. When Morse returned, Bailey was not at the ranch, and defendant claimed he had not seen him since about 2 o'clock in the afternoon. Search was instituted for him, but he was not found for about two weeks, when his dead body was found in the Republican river about half a mile from the ranch house and barn of Morse. Search disclosed that Bailey had been shot in the chest and neck with a shotgun containing buckshot. Between the ranch house and the spot where Bailey was found were discovered a portion of his false teeth, also a knife owned by defendant. Defendant was arrested on a charge of having murdered Bailey, but was discharged, owing to a lack of evidence to hold him. Afterwards, however, a detective ingratiated himself into the confidence of defendant, who confided to him the whole of the facts relative to the tragedy. From his confession, as given by the detective on the witness-stand, it seems that Bailey had, on one or more occasions while about the house, drawn from his pocket a large pocket-book, whose appearance indicated that it contained a large amount of money. Defendant had planned for a number of days to murder the old man and secure this presumptively large sum.

The occasion offered this day, when he and his intended victim were alone for several hours.   Consequently, while the latter was at work at the feed rack in question, defendant secured a shotgun, which he loaded with a charge of buckshot in one barrel and smaller shot in the other. Watching his opportunity he crept out of the house and into a hog pen which had been built of sods.   Resting his gun upon a sod wall he took deliberate aim and shot the unsuspecting old man.   Death was practically instantaneous, the shot having cut the aorta.   The nature of the wound was such that no blood flowed from it, hence no trace of the latter was found in the vicinity.   After robbing his victim, upon whose person he found only about $25, he harnessed a horse and hurriedly dragged the corpse half a mile to the river and sank it in a water hole in the ice from which the stock upon the farm were watered.   He then drove the cattle over the trail made by the body while it was being dragged to the river, and thus obliterated from the snow that evidence of his guilt.   These and many more facts testified to by the detective as having been told him by defendant were fully corroborated by other facts and circumstances which, taken together, as they appear of record, make it evident to this court that if the jury erred at all in the premises, it was on the side of leniency, for it fixed the penalty at life imprisonment.   The record, as a whole, discloses conclusively that the defendant was proved guilty of a most revolting crime; that he had a fair and impartial trial, and has nothing to complain of at the hands of the court or the jury.   Hence it is our duty to affirm the sentence of the lower court, which is accordingly done.

AFFIRMED.